STATE OF NORTH CAROLINA v. GROVER CLEVELAND BURGESS, JR.

No. 8117SC730

(Filed 19 January 1982)

1. Criminal Law §§ 89.2, 162— waiver of objection to hearsay testimony—admissibility of corroborating testimony

    In a prosecution for feloniously receiving stolen tractors, defendant waived objection to a witness's hearsay testimony that a friend of defendant had told the witness that defendant did not care if the tractors were stolen by failing to make a timely objection to the question or a timely motion to strike the answer. Therefore, an S.B.I. agent's testimony that the witness told him that defendant's friend had stated that defendant did not care if the tractors were stolen was properly admitted to corroborate the witness's testimony.

2. Criminal Law § 128.2— testimony struck by court—mistrial denied

    In a prosecution for feloniously receiving stolen tractors, the trial court did not err in the denial of defendant's motion for a mistrial when an S.B.I. agent testified that the person who sold the tractors to defendant told him that it cost him $1500 for the people to steal the tractors where the court struck such testimony and instructed the jury to disregard it.

3. Receiving Stolen Goods § 5.1— feloniously receiving stolen tractors—sufficiency of evidence

    The State's evidence was sufficient for the jury in a prosecution for receiving stolen tractors where it tended to show that the tractors were first shown to defendant between 12:00 a.m. and 3:00 a.m. and that defendant purchased the tractors on another date at 10:00 p.m.; most of the people involved in the transaction were strangers to defendant and were eager to sell the tractors; the name of the corporate owner of the tractors was printed on the side of the truck which transported the tractors when defendant first saw them; the tractors were left on defendant's land after he first saw them rather than being taken to a place of business; defendant purchased the tractors for much less than the fair market value; and defendant paid in cash but did not request a bill of sale.

4. Criminal Law § 114.3— instruction concerning indictment—no expression of opinion

    The trial court's instruction that the indictment against defendant should not be considered as evidence of guilt "in and of itself" did not constitute an improper expression of opinion. G.S. 15A-1222.

APPEAL by defendant from *Washington, Judge.* Judgment entered 19 February 1981 in Superior Court, CASWELL County. Heard in the Court of Appeals 5 January 1982.

Defendant was convicted of feloniously receiving stolen property. Judgment imposing a prison sentence was entered.

The State's evidence tends to show the following. In March of 1976, Gerald Inman discussed with Richard Johnson a plan to steal some tractors from L. H. Vernon Company, Inc., located about 2 miles from Yanceyville, North Carolina. They asked Pell Liles if he would be able to place farm tractors should they obtain some. There was no discussion concerning ownership of the tractors. Liles replied that he thought he had a buyer for them. In a later conversation, Inman, informed Liles that he had two Ford tractors for which he wanted $5,000.00. He told Liles that the tractors were "hot."

Subsequent to this conversation with Inman, Liles contacted Gerald Stevenson. Stevenson was not interested in the tractors but said he had a friend in Siler City who might be. Liles testified that he told Stevenson the tractors were "hot" but that Stevenson replied his friend did not care, if the price was right. The friend Stevenson had in mind was the defendant. Stevenson testified that Liles told him the price was cheap but never informed him the tractors were stolen. According to Stevenson, he relayed that information to defendant: "I told him that I did not know that much about the man that had offered them to me . . . and I could not swear either way where the tractors were from. . . ."

Meanwhile, Johnson was locating people to help in the theft. On or about the night of 28 March 1976, he introduced Inman to Johnny Boykins, Sammy Atkins, and Benny Bowden. The five men drove by L. H. Vernon Co., Inc., to see the tractors. Inman told Boykins, Atkins, and Bowden he would pay them each $500.00 to steal the tractors. They agreed. Johnson lent Inman $1,500.00 and then left the men.

Inman and the others returned to L. H. Vernon Co., Inc. and stole a truck loaded with two tractors. The 1975 Ford 5000 tractor was valued at $14,000.00; the 1969 Ford 5000 was valued at $10,000.00. Both tractors were equipped with accessories.

Inman and Boykins then drove to Siler City where they met Stevenson and Liles. An hour later the other men drove up in the stolen truck with the tractors. Sometime between 12:00 and 3:00 a.m. Stevenson and Liles went to the house trailer of defendant.

Defendant answered their knock, talked to Stevenson inside his trailer and then followed the two men to where the truck was parked, about a mile from defendant's trailer. Defendant looked at the tractors but said they were not what he wanted. He refused to pay the asking price of $5,000.00. Inman testified that at this meeting, he never told defendant the tractors were stolen and defendant never asked. The name of L. H. Vernon Co., Inc., was written on the side of the truck.

Defendant returned to his trailer where Stevenson discussed the matter with him further. Defendant stated that he "did not want them at no price." Defendant did, however, allow the men to unload the tractors near his home.

One or two days later Inman called defendant on the telephone and again inquired as to his interest in buying the tractors. Inman stated he had no place for them and needed to get rid of them. There was no mention that the tractors were stolen. That night around 10:00 p.m., defendant met Inman at an exit off the highway. This was the second time the two men had seen each other. Defendant paid Inman $1,600.00 in cash for the tractors.

The tractors were later recovered. One was in the possession of defendant's brother. The other was found at an auction house in Pennsylvania. The safety equipment on the tractors had been removed.

At the close of the State's evidence, defendant moved for a mistrial. He also moved for a nonsuit. Both motions were denied.

Defendant's evidence is that Stevenson knew defendant was interested in purchasing a Ford 5000 tractor because they had attended auctions together. After receiving a call from Stevenson asking if he would be interested in two tractors, defendant received a call from a man in Danville, Virginia. The man said he was moving tractors from South Carolina to Virginia and en route would bring them by for defendant to view.

On a weekend night, defendant was awakened by a knock. Outside stood Inman who said he had the tractors there for defendant to examine. Defendant went with him to the truck. Defendant testified that the tractors did not look like farming tractors. Rather, they had cages on them and seemed designed for clearing roadways. Inman wanted $10,000.00 for the two tractors but defendant replied he did not want the tractors at any price: "I said this because I wanted the 5000 tractor, but I did not want to spend the time taking all of that cage off. . . ." Before returning home, defendant gave permission to Inman to unload the tractors anywhere but in his yard. Defendant understood Inman to be the owner of the tractors.

Two days later, Inman called defendant and identified himself as the owner of the tractors. He said he still needed to sell the tractors and was now willing to sell them for $2,500.00. Defendant asked him if the tractors were stolen, and he assured defendant that they were not.

Defendant borrowed $2,000.00 from his brother and met Inman around 7:00 or 8:00 p.m. at a place off of Highway 421 near Liberty, North Carolina. Defendant paid Inman $2,500.00 in one hundred dollar bills for the tractors. He did not ask for nor receive a bill of sale.

Defendant removed the cages from the tractors to make them suitable for farming. He also repainted them and replaced certain parts. He used the 1969 tractor for two seasons before selling it to an auction company for $3,800.00. He sold the 1975 tractor to his brother for $2,000.00.

At the close of all the evidence, defendant again moved for a nonsuit. The court denied his motion.

*Attorney General Edmisten, by Assistant Attorney General Guy A. Hamlin, for the State.*

*Vernon, Vernon, Wooten, Brown and Andrews, by Wiley P. Wooten, for defendant appellant.*

VAUGHN, Judge.

Defendant makes several assignments of error. We hold that none of them disclose prejudicial error.

[1]  Defendant first excepts to the admission of testimony of two State witnesses. On direct examination, Liles testified without objection to a phone conversation he had had with Stevenson concerning the tractors: "I told Mr. Stevenson that they were hot and he stated that his friend in Siler City did not care if the price was right."

Later, an S.B.I. agent testified to statements given to him by accomplices to the theft of the tractors. He repeated Liles' statement which contained the following: "I also told Gerald Stevenson that the tractors were stolen. He told me that he would call his friend up in the county and see if he wanted them. . . . After a few minutes Gerald Stevenson called me back and said. . . ." At that point, defendant objected.

The jury was excused while the judge heard arguments on the objection. The judge excluded testimony of the agent which included statements to which Liles had not previously testified. He overruled, however, defendant's objection to the above-quoted testimony. The court ruled the agent's testimony was admissible for corroboration. Defendant then moved to strike Liles' previous testimony. The court denied the motion. When the jury returned, the agent testified that Liles had told him, "After a few minutes Gerald Stevenson called me back and said that his friend wanted the tractors and didn't care if they were hot or stolen at that price."

To review the court's rulings, we must first determine whether Liles' testimony on direct examination was admissible. His testimony as to what Stevenson told him concerning defendant was clearly hearsay. As such, defendant had the right to object to its admission. Failure to object in apt time to inadmissible evidence, however, constitutes a waiver. *State v. Neal*, 19 N.C. App. 426, 430, 199 S.E. 2d 143, 145 (1973). Usually, "apt time" to object is when the question calling for inadmissible evidence is asked. *State v. Bost*, 33 N.C. App. 673, 236 S.E. 2d 296, *cert. denied*, 293 N.C. 254, 237 S.E. 2d 537 (1977). Where the admissibility of evidence becomes apparent only upon the answer, the proper objection is a motion to strike. *State v. Neal, supra.* The present defendant failed to object immediately to the question or to move to have Liles' answer struck.

Defendant did not move to strike Liles' testimony until the S.B.I. agent testified. A motion to strike is addressed to the discretion of the trial court. *Stein v. Levins*, 205 N.C. 302, 171 S.E. 96 (1933); *State v. Bost, supra.* In *State v. Beam*, 45 N.C. App. 82, 262 S.E. 2d 350 (1980), we held that a motion to strike, made after other questions were asked, would not relate back to earlier answers. It was, therefore, clearly proper for the present court to deny defendant's motion to strike made after several other witnesses had testified.

Concluding that defendant waived any objection he may have had to Liles' testimony by his failure to act timely, we next address defendant's objection to testimony by the S.B.I. agent. The State prefaced its questioning by stating the agent's testimony was admitted solely for the purpose of corroboration. The court, therefore, properly sustained objections to that part of the agent's testimony which introduced new evidence. Defendant, however, had earlier allowed Liles to testify that Stevenson had told him defendant did not care if the tractors were stolen. Since we have held that previous testimony admissible, testimony by the agent to a similar statement by Liles was properly admitted for corroborative purposes. As such, it came in not to prove the truth of the matter asserted but to prove the statement was in fact made. There was no hearsay violation. 1 Stansbury, N.C. Evidence § 141 (Brandis rev. 1973). *See also State v. Madden*, 292 N.C. 114, 232 S.E. 2d 656 (1977); *State v. Miller*, 288 N.C. 582, 220 S.E. 2d 326 (1975).

**[2]** Defendant next argues the court erred in denying his motion for a mistrial. The S.B.I. agent testified concerning statements Inman had given him. He sated that Inman had said he became upset when defendant originally refused to purchase the tractors. The agent continued:

> "I believe it was the next day that he said that there was a contact made and Mr. Burgess stated that he would give, I think that it was fifteen hundred dollars for the tractors. And that Mr. Inman stated that when he went down and met Mr. Burgess on the pull-off, off 421, I believe that he told him that you know that it cost him fifteen hundred dollars for, just for the people to steal the tractors and he gave him sixteen hundred. . . ."

Defendant made a motion to strike. The court overruled the motion as to testimony that Inman said he was given $1,600.00 by defendant. It sustained defendant's objection to the testimony concerning Inman's explanation to defendant of the cost.

After the ruling on his motion, defendant moved for a mistrial. Defense attorney argued outside the presence of the jury that the stricken statement was so prejudicial to defendant that a fair trial was no longer possible. The court denied defendant's motion. We conclude the court's ruling was proper.

A motion for mistrial in a case not involving a capital offense is within the court's discretion. The ruling is not reviewable without a showing of gross abuse of discretion. *State v. Yancey*, 291 N.C. 656, 664, 231 S.E. 2d 637, 642 (1977). Here, the court struck the hearsay portions of the witness' testimony and gave the jury a limiting instruction. After ruling on defendant's motion for a mistrial, the court again instructed the jury. It explained what part of the agent's testimony the jury could consider, solely for corroborative purposes, and what part the jury should disregard. We must assume the jurors were capable of following the court's instructions. In light of the other evidence, we do not find the stricken testimony so prejudicial that its effect on the jury could not be erased. *Compare with State v. Hunt*, 287 N.C. 360, 215 S.E. 2d 40 (1975); *State v. Aycoth*, 270 N.C. 270, 154 S.E. 2d 59 (1967).

[3] Defendant also argues the court erred in denying his motion to dismiss made at the close of the State's evidence and renewed at the close of all the evidence. We disagree.

In ruling on a motion to dismiss, the court must consider evidence in the light most favorable to the State. *State v. Madden*, 292 N.C. 114, 232 S.E. 2d 656 (1977). In this action, there was ample evidence from which a jury could infer that defendant knew, or must have known, that the tractors were stolen. *Compare with State v. Oxendine*, 223 N.C. 659, 27 S.E. 2d 814 (1943). Besides the unusual hours of the transactions, there was testimony that most of the people involved were strangers to defendant; they were anxious to sell the tractors; the name of L. H. Vernon Co., Inc. was printed on the side of the truck yet no one ever mentioned ownership of the truck and tractors; the tractors were left on defendant's land rather than taken to any place

of business; defendant purchased the tractors for much less than their fair market value; defendant paid in cash yet did not request a bill of sale. We hold the court properly denied defendant's motion to dismiss.

**[4]** Finally, defendant objects to the court's instructions that the indictment against him should not be considered as evidence of guilt "in and of itself." Defendant argues that the comment implies the indictment could become incriminating if there were other evidences of defendant's guilt and is thus an improper expression of opinion. G.S. 15A-1222. Upon examining the instruction in its entirety, we conclude the jury was properly charged.

No error.

Judges WEBB and HILL concur.